**UNTIED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION**

| | |
|---|---|
| JOE D. MAGEE, ET AL. | CIVIL ACTION NO. 15-2097 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| BHP BILLITON PETROLEUM PROPERTIES (N.A.), L.P. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court are three Motions: (1) Plaintiff The Pesnell Law Firm's ("Pesnell") Motion for Summary Judgment pursuant to Rule 56 of the F.R.C.P. against Defendant BHP Billiton Petroleum Properties (N.A.), L.P. ("BHP") asserting there is no genuine dispute of material fact with respect to the claims of unpaid bonuses under the terms of the lease (Record Document 27); (2) Plaintiffs Joe D. Magee and Joann Fulmer Magee's, husband and wife (jointly, the "Magees"), Motion for Partial Summary Judgment seeking royalties due for the failure of BHP to timely pay under Article 139 of the Mineral Code (La. R.S. 31:139) and requesting an accounting from BHP (Record Document 27); and (3) BHP's Cross Motion for Partial Summary Judgment asserting it is entitled to a judgment as a matter of law that it (i) does not owe Plaintiffs any damages for nonpayment of royalties under Mineral Code Article 139; (ii) does not owe any additional bonus payments; and (iii) that Plaintiffs' request for an accounting is premature (Record Document 31). For the reasons stated in the instant Memorandum Ruling, Pesnell's Motion for Summary Judgment and the Magees' Motion for Partial Summary Judgment are hereby **DENIED**. Additionally, BHP's Cross Motion for Partial Summary Judgment is hereby **GRANTED**.

1

## FACTUAL AND PROCEDURAL BACKGROUND

The Magees executed four (4) separate mineral leases (the "Leases") in favor of Petrohawk[1], to-wit:

(1) That certain oil, gas and mineral lease executed by Joe Magee and Joann Fulmer Magee in favor of Petrohawk under date of August 14, 2009, and recorded in the Conveyance Records of DeSoto Parish, Louisiana, under Registry No. 667517, in Book 1024, at page 750, covering a fifty (50) acre tract of land;

(2) That certain oil, gas and mineral lease executed by Joe Magee and Joann Fulmer Magee in favor of Petrohawk under date of August 14, 2009, and recorded in the Conveyance Records of DeSoto Parish, Louisiana, under Registry No. 668090, in Book 1027, at page 411, covering an undivided one-half interest in the mineral underlying a 93.56 acre tract of land;

(3) That certain oil, gas and mineral lease executed by Joe Magee and Joann Fulmer Magee in favor of Petrohawk under date of August 14, 2009, and recorded in the Conveyance Records of DeSoto Parish, Louisiana, under Registry No. 668092, in Book 1027, at page 423, covering an undivided one-half (½) interest in the minerals underlying a 2.07 acre tract of land; and

(4) That certain oil, gas and mineral lease executed by Joe Magee and Joann Fulmer Magee in favor of Petrohawk under date of August 14, 2009, and recorded in the Conveyance Records of DeSoto Parish, Louisiana, under Registry No. 668094, in Book 1027, at page 435, covering an undivided one-half (½) interest in the minerals underlying a 1.0 acre tract of land.

Record Document 1-3 at 2. Paragraph 11 of each of the Leases provides as follows:

In case of suit, adverse claim, dispute or question as to the ownership of the royalties (or some part thereof) payable under this lease, Lessee shall not be held in default in payment of such royalties (or the part thereof in dispute) until such suit, claim, dispute or question has been finally disposed of and Lessee shall have thirty (30) days after being furnished with a certified copy of the instrument or instruments disposing of such suit, claim or dispute, or after being furnished with proof sufficient, in Lessee's opinion, to settle such question within which to make payment.

---

[1] Petrohawk Properties, LP was BHP's predecessor.

Record Document 27-6 at 7, 14, 21, 27. Paragraph 29 of the Leases provides, in pertinent part, that:

> Lessee agrees that if Lessor establishes that the Mineral Servitude expired prior to the granting of this lease either by a properly executed acknowledgment by the owner of the servitude or by final, unappealable judgment of a court of competent jurisdiction, then Lessee shall pay to Lessor an additional consideration of $4,975.00 per net mineral acre for all or that portion of the Leased Premises over which the Mineral Servitude has expired. Such additional bonus consideration will be paid to Lessor within 30 days after Lessor has submitted to Lessee a certified copy of such acknowledgment or judgment.

Record Document 27-6 at 9, 16, 23, 29.

Petrohawk (BHP) spudded the Murphy 5H No. 1 Well on or about March 18, 2010, which was completed as a gas well capable of producing gas in paying quantities on July 25, 2010. See id. at 3. Pursuant to the Leases, the Magees engaged Pesnell (collectively, the "Plaintiffs") to file suit on their behalf to obtain a declaratory judgment that the Worley servitude had prescribed.[2] As part of the contingency fee agreement, the Magees executed an Act of Assignment on August 25, 2010, in favor of Pesnell (the "Assignment"). See Record Document 27-5 at 20. The Magees assigned Pesnell their interest to receive "additional cash bonuses or consideration in the amount of $4,975.00 per net mineral acre under the oil, gas and mineral leases we, as Lessors, have executed in favor of [BHP] covering the following described lands." See id. Pesnell later filed suit on January 27, 2011 (the "Worley suit"). See Record Document 1-3 at 3. The Forty-Second Judicial District Court in DeSoto Parish, Louisiana, rendered judgment on May

---

[2] In 1958, Wyeth Worley sold a 176.6-acre tract of land (this land is the subject of the Leases) in DeSoto Parish to C.B. Magee, the Magees' ancestor in title, subject to a mineral servitude. See Record Document 27-5 at 30. In early 2011, the Magees filed suit to declare the servitude had prescribed for nonuse. See id. They contended the Worleys failed to use the servitude for over ten years, from November 1987 to October 1999. See id.

3

22, 2014, in favor of the Magees, terminating the mineral servitude claimed by the Worleys, effective November 1, 1997, as a result of the accrual of liberative prescription. See id. The Court of Appeal, Second Circuit, affirmed the judgment of the District Court in an opinion handed down on March 4, 2015, which became final on April 6, 2015. See id.

Shortly after the judgment became final, Pesnell mailed BHP on April 14, 2015, by certified mail, a certified copy of the judgment of the Forty-Second Judicial District Court, a copy of the decision of the Court of Appeal, a copy of each of the Leases executed by the Magees in favor of Petrohawk (BHP), and a copy of the Assignment.[3] See id. at 4. Pesnell requested that BHP pay the Magees the royalties due under the Leases on production from the Murphy 5H No. 1 Well from the date of first production and pay Pesnell the unpaid balances due on agreed bonuses with interest. See id.

BHP received the letter dated April 14, 2015, on April 22, 2015, but did not pay the royalties due the Magees within thirty days after receipt of the letter, nor did it provide any written reason for its failure. See id. Pesnell wrote BHP and Petrohawk another letter dated June 8, 2015, again requesting payment of the production royalties due the Magees and advising BHP and Petrohawk that they were subject to penalties, interest and attorneys' fees under La. R.S. 31:139 and again requesting payment to Pesnell of the unpaid bonuses due under the Leases with interest. See id. at 4-5. BHP received the letter on June 10, 2015. See id. at 5. In an e-mail dated June 24, 2015, BHP advised Pesnell that "we are just making sure that the Court decision is final and that the

---

[3] BHP contends nothing was attached or enclosed with this letter. See Record Document 31-1 at 11. BHP states the letter merely advised BHP that the Second Circuit had issued a judgment affirming the district court, and that said judgment became final. See id.

ownership status as to the litigated interests is current." Record Document 27-5 at 60. In a later e-mail dated June 25, 2015, BHP advised Pesnell that "[w]e are having our legal team review the terms of the lease as well as current mineral ownership. It is my understanding that a mineral servitude created by Joe Magee Sr., expired while the well was producing, so we want to be sure the right people are being paid for the right time periods before royalty checks go out the door. I will update you once our title has been supplemented." Record Document 31-5 at 123.

Plaintiffs originally filed suit against BHP on June 29, 2015, in the Forty-Second Judicial District Court in DeSoto Parish, Louisiana. See Record Document 1-3. BHP removed the action by a Notice of Removal filed on July 24, 2015, based upon diversity of citizenship. See Document 1. Plaintiffs filed their Motions for Summary Judgment and Partial Summary Judgment on May 26, 2016. See Record Document 27. In the Joint Motion, Pesnell seeks to collect from BHP the unpaid bonuses of $4,975.00 per acre due under the four mineral leases executed by the Magees in favor of Petrohawk (BHP), together with legal interest from its unpaid bonuses from May 14, 2015, until paid. See id. at 2. The Magees seek partial summary judgment holding that BHP's failure to timely pay the royalties due on production from the Murphy 5H No. 1 Well was willful and without reasonable grounds under Article 139 of the Mineral Code (La. R.S. 31:139). See id. The Magees also seek an order of the Court directing BHP to provide them an accounting with respect to the royalties due. See id.

BHP filed its Cross Motion for Partial Summary Judgment on June 20, 2016, asserting that it (1) does not owe Plaintiffs any damages for nonpayment of royalties under Mineral Code Article 139; (2) does not owe any additional bonus payments until a

5

certified copy of the judgment of the Second Circuit Court of Appeal in the Worley Suit is provided; and (3) Plaintiffs' request for an accounting is premature at this time. See Record Document 31.

Subsequent to the filing of these Motions, Plaintiffs sent BHP a certified copy of the judgment of the Second Circuit Court of Appeal on March 6, 2017. See Record Document 68-3. In response, BHP sent Plaintiffs a check in the amount of $489,117.13, which is in full satisfaction of the principal amount of bonuses owed under the leases. See Record Document 68-4. Accordingly, Pesnell's demand for the unpaid bonus is rendered moot; however, Pesnell still seeks legal interest on its claim from the earliest time supportable by law.

## LAW AND ANALYSIS

### I. LEGAL STANDARDS

#### A. SUMMARY JUDGMENT

Rule 56 of the F.R.C.P. governs summary judgment. This rule provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." F.R.C.P. 56(a). Also, "a party asserting that a fact cannot be or is genuinely disputed must support the motion by citing to particular parts of materials in the record, including . . . affidavits . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." F.R.C.P. 56(c)(1)(A) and (B). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment." F.R.C.P. 56(e)(3).

6

In a summary judgment motion, "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings . . . [and] affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (U.S. 1986) (internal quotations and citations omitted). If the movant meets this initial burden, then the non-movant has the burden of going beyond the pleadings and designating specific facts that prove that a genuine issue of material fact exists. See Celotex, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554 (U.S. 1986); see Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). A non-movant, however, cannot meet the burden of proving that a genuine issue of material fact exists by providing only "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." Little, 37 F.3d 1069, 1075 (5th Cir. 1994).

Additionally, in deciding a summary judgment motion, courts "resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is when both parties have submitted evidence of contradictory facts." Id. Courts "do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." Id.

"A partial summary judgment order is not a final judgment but is merely a pre-trial adjudication that certain issues are established for trial of the case." Streber v. Hunter, 221 F.3d 701, 737 (5th Cir.2000). Partial summary judgment serves the purpose of rooting out, narrowing, and focusing the issues for trial. See Calpetco 1981 v. Marshall Exploration, Inc., 989 F.2d 1408, 1415 (5th Cir.1993).

7

## B. FEDERAL COURT SITTING IN DIVERSITY

Since this case is before the Court under its diversity jurisdiction, the Court must apply the substantive law of Louisiana. See Bradley v. Allstate Ins. Co., 620 F.3d 509, 517 n. 2 (5th Cir. 2010), citing Erie R. R. v. Tompkins, 304 U.S. 64 (1938). The Fifth Circuit in In re Katrina Canal Breaches Litigation stated the appropriate methodology to be applied by a Federal Court sitting in diversity in Louisiana:

> "To determine Louisiana law, we look to the final decisions of the Louisiana Supreme Court in the absence of a final decision by the Louisiana Supreme Court, we must make an Erie guess and determine, in our best judgment, how that court would resolve the issue if presented with the same case. In making an Erie guess, we must employ Louisiana's civilian methodology, whereby we first examine primary sources of law: the constitution, codes, and statutes. Jurisprudence, even when it rises to the level of *jurisprudence constante*, is a secondary law source in Louisiana. Thus, although we will not disregard the decisions of Louisiana's intermediate courts unless we are convinced that the Louisiana Supreme Court would decide otherwise, we are not strictly bound by them."

495 F.3d 191, 206 (5th Cir. 2007) (citations and internal quotation marks omitted).

## II. ANALYSIS

### A. The Magees' Claims

The Magees seek a partial summary judgment holding that BHP's failure to timely pay the royalties due then on production from the Murphy 5H No. 1 Well was willful and without reasonable grounds, pursuant to La. R.S. 31:139 and an order directing BHP to provide the Magees an accounting with respect to the royalties due or production from the Murphy 5H No. 1 Well from the date of first production. See Record Document 27-1 at 21. BHP also filed a partial summary judgment motion seeking to dismiss the Magees' claims under Article 139. See Record Document 31-1 at 1. It also asserts that an order of

accounting is premature. See id. at 20. For the reasons discussed herein, the Court agrees with BHP.

### i. Magees' Claims Under Article 139 of the Mineral Code

The Magees claim that BHP failed to respond to their April 14, 2015 demand for royalties within thirty days, and that its failure was willful and without reasonable grounds resulting in double damages, interest, and attorneys' fees under Article 139 of the Mineral Code. La. R.S. § 31:139 provides:

> If the lessee pays the royalties due in response to the required notice, the remedy of dissolution shall be unavailable unless it be found that the original failure to pay was fraudulent. The court may award as damages double the amount of royalties due, interest on that sum from the date due, and a reasonable attorney's fee, provided the original failure to pay royalties was either fraudulent or willful and without reasonable grounds. In all other cases, such as mere oversight or neglect, damages shall be limited to interest on the royalties computed from the date due, and a reasonable attorney's fee if such interest is not paid within thirty days of written demand therefor.

The Leases are the law between the parties, defining their respective legal rights and obligations. See Frey v. Amoco Prod. Co., 603 So. 2d 166, 172 (La. 1992). Parties are free to contract for any object that is lawful, possible, and determined or determinable. See La. C.C. art. 1971. "Unless expressly or impliedly prohibited from doing so, individuals may renounce or modify what is established in their favor by the provisions of this [Mineral] Code if the renunciation or modification does not affect the rights of others and is not contrary to the public good." La. R.S. § 31:3. "Express lease provisions concerning notice and default are the 'law between the parties' irrespective of contrary notice and default provisions of the [Civil] Code and other statutes." Gen. Elec. Capital Corp. v. Se. Health Care, Inc., 950 F.2d 944, 951 (5th Cir. 1991). Thus, parties to a lease

9

are free to dispense with the requirements of the Mineral Code by contract, including the notice and default provisions of Article 137, *et seq*.

Here, the parties have done just that. Each of the Leases contained the following provision:

> In case of suit, adverse claim, dispute or question as to the ownership of the royalties (or some part thereof) payable under this lease, Lessee shall not be held in default in payment of such royalties (or the part thereof in dispute) until such suit, claim, dispute or question has been finally disposed of and Lessee shall have thirty (30) days after being furnished with a certified copy of the instrument or instruments disposing of such suit, claim or dispute, or after being furnished with proof sufficient, in Lessee's opinion, to settle such question within which to make payment.

Record Document 27-6 at 7, 14, 21, 27. This provision dispenses with the requirements of Article 137,[4] *et seq.*, and makes the thirty-day delay period commence the day after Lessee is "furnished with a certified copy of the instrument or instruments disposing of such suit … or after being furnished with proof sufficient, in Lessee's opinion, to settle such question." Id. (Emphasis added.)

Although at times during the instant suit the Magees have asserted Pesnell sent a certified copy of the Judgment of the Second Circuit Court of Appeal to BHP attached to Pensell's letter dated April 14, 2015,[5] the Magees have since acknowledged that "although not a certified copy by the Clerk of the Second Circuit, the copy of the Second Circuit's decision was a complete copy of the decision." Record Document 36-1 at 15. The Magees allege that Pesnell sent BHP, through certified mail, a certified copy of the trial court judgment in the Worley suit, a copy of the judgment of the Second Circuit Court

---

[4] Article 137 reads, "If a mineral lessor seeks relief for the failure of his lessee to make timely or proper payment of royalties, he must give his lessee written notice of such failure as a prerequisite to a judicial demand for damages or dissolution of the lease." La. R.S. § 31:137.

[5] See Record Document 1-3 at 4; Record Document 31-5 at 10.

of Appeal affirming the trial court's judgment, and a copy of the Leases, satisfying the requirements of Paragraph 11. <u>See</u> Record Document 1-3 at 4. BHP contests whether Plaintiffs ever sent the above-listed documents attached to the letter, but that argument is moot considering Plaintiffs failed to send the requisite documents, namely a certified copy of the Second Circuit Court of Appeal judgment.

The Leases provide that "Lessee shall have thirty (30) days after being furnished with a certified copy of the instrument or instruments disposing of such suit…." Record Document 27-6 at 7, 14, 21, 27. Pesnell's failure to send a certified copy of the Judgment of the Second Circuit Court of Appeals is dispositive of the Magees' argument. It was the Second Circuit Judgment that "disposed" of the suit, not the trial court judgment, since the suit was still viable before the Second Circuit ruled. In <u>Otwell v. Vaughan</u>, 173 So. 527, 532 (La. 1937), the Louisiana Supreme Court explained this concept, citing two United States Supreme Court cases:

> In <u>Mackenzie v. A. Engelhard & Sons Co.</u>, 266 U.S. 131, 142, 143, 45 S.Ct. 68, 69, 69 L.Ed. 205, 209, 36 A.L.R. 416, it is said: 'An appeal is a proceeding in the original cause and the suit is pending until the appeal is disposed of.' And in <u>Gulf Refining Co. v. United States</u>, 269 U.S. 125, 137, 46 S.Ct. 52, 54, 70 L.Ed. 195, 199, originating in the United States District Court for the Western District of Louisiana, it is said: 'An appeal is not a new suit in the appellate court, but a continuation of the suit in the court below,' or, as this court has recently said, 'a proceeding in the original cause, and the suit is pending until the appeal is disposed of.'"

Put simply, the certified copy of the trial court judgment is not a certified copy of the instrument which disposed the suit; thus, the Magees never put BHP on notice that their payments were due as required under Paragraph 11 of the Leases.

The Magees still assert the certified copy of the trial court judgment, copy of the Judgment of the Second Circuit Court of Appeal, and a copy of the Leases satisfies the

Paragraph 11 requirements. See Record Document 36-1 at 7. The provision in Paragraph 11 also states the thirty-day delay period can also start after the Lessee is "furnished with proof sufficient, in Lessee's opinion, to settle such question." (Emphasis added.) The Magees argue BHP, could, in no way, find the documents insufficient unless in bad faith. See Record Document 36-1 at 8. "An obligor is in bad faith if he intentionally and maliciously fails to perform his obligation." La. C. C. art. 1997, comment (b). Arbitrary or capricious conduct or defenses asserted without probable cause are hallmarks of bad faith. See Louisiana Bag Co., Inc., v. Audubon Indem. Co., 2008-0453 (La. 2008), 999 So.2d 1104, 1114. "The phrase 'arbitrary, capricious, or without probable cause' is synonymous with 'vexatious,' and a 'vexatious refusal to pay' means 'unjustified, without reasonable or probable cause or excuse." Id. The Magees believe there is nothing to show there was a "good faith" dispute or defense, or that BHP had any reasonable grounds to delay payment. See Record Document 36-1 at 9. However, Louisiana jurisprudence does not support such argument.

Louisiana courts have consistently held that similar provisions allow a lessee to withhold payment until being furnished with the requisite documents. See Atl. Ref. Co. v. Shell Oil Co., 46 So.2d 907 (La. 1950); Pearce v. S. Nat. Gas Co., 58 So.2d 396 (La. 1952); Hibbert v. Mudd, 294 So.2d 518 (La. 1974); Hanks v. Wilson, 633 So. 2d 1345 (La.App. 1st Cir. 1994); Lapeze v. Amoco Prod. Co., 842 F. 2d 132, 135 (5th Cir. 1988) (applying Louisiana law). In Pennzenergy Co., v. Wells, et al., Civ. Action No. 99-0959 (W.D. La 2001), aff'd Pennzenergy Co. v. Wells, 31 Fed. Appx 158 (5th Cir. 2001), this Court analyzed a similar lease provision. There, the dispute involved a "change of

ownership" provision[6] which stated, "[n]o change in the ownership of the land or assignment of rentals or royalties shall be binding on the Lessee until after the Lessee has been furnished with a certified copy of the recorded instrument evidencing such transfer." Id. at *1. The lessors did not provide the lessee with a certified judgment of possession evidencing the transfer of ownership, but did send a completed transfer order and affidavit of heirship forms, evidence lessors thought were sufficient. Id. at *2. However, this Court disagreed, recognizing that Louisiana courts require strict compliance with these provisions, "even in situations in which the lessee otherwise may have actual or constructive notice." Civ. Action No. 99-0959, Doc. 56 at 9.[7] The court found the lessor failed to provide the lessee the requisite instruments, "the record was conspicuously void of any evidence to establish that the claimant provided lessee with the required certified proof … [w]ithout such proof, under the specific terms of the [Lease], [lessee] is under no obligation to make royalty payments." Id. at 11.

In Lapeze, 842 F. 2d 132, the court dealt with a similar dispute regarding a lease provision relating to shut-in payments. There, the provision required a "certified copy of recorded instrument or judgment evidencing such sale, transfer or inheritance." Id. at 134. The lessors argued that an act of correction met the requirements of the lease, and even if it did not, it put the lessees on notice that payment was due. See id. The trial court disagreed and stated the lessees "ha[d] never been furnished with the requisite documents as required by paragraph 9 of the lease." Id. at 133. The Fifth Circuit affirmed,

---

[6] Although many of the cases cited involve a "change of ownership" provision, the Court finds their reasoning applicable to the instant case as the provisions, like the instant provision, required a certified copy of documents before payments could be made.

[7] This Court's Memorandum Ruling was not published, but the Fifth Circuit cited to the Ruling and affirmed its decision. See id. at *2.

"It has been generally accepted that the lessee's better course in such 'catch 22' situations is to comply with the literal terms of the lease, regardless of the lessee's actual or constructive knowledge." Id. at 135.

Here, the Magees failed to provide BHP with a certified copy of the judgment disposing of the suit which came from the Second Circuit Court of Appeal. Even if Pesnell sent a certified copy of the trial court judgment, a copy of the Judgment of the Second Circuit Court of Appeal, and a copy of the Leases, the Magees have failed to comply with the specific provision in the Leases. Although the Magees believe BHP's failure to pay was unjustified or lacked reasonable cause, equating to bad faith, such an argument cannot be made in light of Louisiana's recognition of strict compliance with such provisions.

The Magees cite Ultra Resources v. Hartman, 226 P. 3d 889 (Wy. 2010), in support of their argument that BHP was in bad faith for requesting the required certified copy of the disposing judgment. However, as BHP demonstrates, this case is easily distinguishable. There, an operator was found in bad faith for requesting original copies of certain instruments. The provision at issue stated the operator was not required to recognize a transfer of ownership until operator "[had] been furnished with legal evidence of such deed, assignment, transfer or passing of title by will, testament or inheritance which is acceptable to Operator." Id. at 914. The operator believed original copies were required despite having been provided with a "chronological chain of title which referenced all of the conveyance documents; BLM documents; and a title opinion recognizing the title transfer." Id. at 918. The Wyoming Supreme Court disagreed with the operator because the provision "d[id] not specifically state that the actual conveyance

documents must be provided to the operator." Id. The Wyoming court actually distinguished the Lapeze case because it involved a provision of the parties' contract, which required a certified copy of the recorded instrument, stating, "We agree with the general principle that the contract controls." Id.

Here, the Leases specifically stated the Magees were required to send a certified copy of a judgment disposing of the Worley suit. As the court in Ultra Resources stated and Louisiana law requires (law set forth on page 9), the contract controls. The Magees' contention that BHP acted in bad faith for requesting a certified copy of the requisite documents, a stipulation negotiated and agreed upon by the parties, has no merit.

The Magees next argue BHP acted in bad faith in delaying payment, stating that BHP was obligated under Article 138 of the Mineral Code for failing to "respond by stating in writing a reasonable cause for non-payment" within thirty days. See Record Document 36-1 at 12. La. R.S. § 31:138 reads, in pertinent part, "The lessee shall have thirty days after receipt of the required notice within which to pay the royalties due or to respond by stating in writing a reasonable cause for nonpayment." However, parties can renounce or modify what is established in the Mineral Code. See La. R.S. § 31:3. "Express lease provisions concerning notice and default are the 'law between the parties' irrespective of contrary notice and default provisions of the Civil Code and other statutes." Gen. Elec. Capital Corp., 950 F. 2d at 951. As discussed at length above, the Magees and BHP stipulated BHP's receipt of a certified copy of a judgment disposing the Worley suit was required to put BHP on notice to pay or give a reasonable cause for non-payment. Plaintiffs failed to send the requisite documents to BHP, thus BHP was never put on notice and not required to give its reasons. It is with this same reasoning the Court finds the

15

Magees' cited cases, Dickerson v. Lexington, 556 F. 3d 290 (5th Cir. 2009) and Guidry v. State Farm, 2011-262 (La. App. 3 Cir. 10/5/11); 74 So. 3d 1276, are inapplicable to this case.[8]

As stated above, the Magees have failed to provide the requisite instruments evidencing the final disposition of the Worley suit. Without such evidence, under the specific terms of the Leases, BHP did not act unreasonably in failing to make royalty payments to the Magees. Therefore, the Magees' claims arising under Article 139 of the Mineral Code for double damages, interest, and attorneys' fees are without merit and must fail as a matter of law. Accordingly, the Magees' Motion for Partial Summary Judgment seeking royalties due for the failure of BHP to timely pay under Article 139 of the Mineral Code is denied. For the same reasons discussed above, BHP's Cross Motion for Partial Summary Judgment on this same issue is granted.

### ii. Magees' Order of Accounting

The Magees contend they are entitled to an accounting because the amount of royalties paid by BHP in August 2015 was erroneous in at least two respects: (1) it did not include royalties on production from the Murphy 5H No. 1 Well attributable to the term servitude reserved by the Magees in their sale to the Miletellos on June 9, 1998, which expired on June 9, 2013, after May 31, 2103; and (2) it did not include legal interest on the royalties from the date due (i.e., May 14, 2015), until paid. See Record Document 27-1 at 24. BHP argues that the Magees' two accusations regarding the royalties paid by

---

[8] Dickerson and Guidry both involve claims under insurance policies wherein the insurers were held to violate statutory obligations by failing to timely pay claims. In those cases, all the statutory requirements had been met. Here, the issue involves contractual prerequisites which the Court has determined have not been met.

BHP in August 2015 are not supported by any evidence; and, in the alternative, argue summary judgment would be premature. See Record Document 31-1 at 24.

Successful claims for accounting in Louisiana follow a well-defined pattern:

> "typically an action by the lessor to cancel his mineral lease on the ground of nonpayment of royalties. If the court orders cancellation of the lease, it may also direct the lessee to account to the plaintiff for the royalties earned until cancellation. See Davies v. Texarkana Crude Oil Co.; Fontenot v. Sunray Mid-Continent Oil Co.; Pierce v. Atlantic Ref. Co.; Bailey v. Meadows. Even if the court rejects the lessor's demand for cancellation because nonpayment was excusable, plaintiff is still entitled to an accounting of royalties that have accrued under the terms of the lease. See Mire v. Hawkins; Harris v. J. C. Trahan Drilling Contractor, Inc."

Williams v. Humble Oil & Ref. Co., 432 F.2d 165, 169–70 (5th Cir. 1970). Since this ruling only pertains to the applicability of Article 139 of the Mineral Code and not the correct amount of royalties owed the Magees under the Leases, the Court finds the Magees' request of an accounting premature at this time. The Court also takes into account the parties' agreement that discovery is not complete with regards to the amount of royalties due the Magees. See Record Document 31-1 at 20; Record Document 27-1 at 24. "As a general principle, summary judgment may be granted only "[a]fter adequate time for discovery." City of Alexandria v. Cleco Corp., 735 F. Supp. 2d 465, 470 (W.D. La. 2010), citing Versai Mgmt. Corp. v. Clarendon Am. Ins. Co., 597 F.3d 729, 735 (5th Cir.2010). Therefore, the Court must deny the Magees' Motion of Partial Summary Judgment as premature.

### B. Pesnell's Claims

Pesnell seeks to collect from BHP the unpaid bonuses of $4,975.00 per acre due under the four mineral leases executed by the Magees in favor of Petrohawk (BHP), together with legal interest from its unpaid bonus from May 14, 2015, until paid.

Subsequent to the filing of these Motions, Pesnell sent BHP a certified copy of the judgment of the Second Circuit Court of Appeal on March 6, 2017. See Record Document 68-3. In response, BHP sent Pesnell a check in the amount of $489,117.13, which is in full satisfaction of the principal amount of bonuses owed under the leases. See Record Document 68-4. Accordingly, Pesnell's demand for the unpaid bonus as alleged in their Petition is now moot; however, Pesnell still seeks legal interest on all of their claims from the earliest time supportable by law. See Record Document 68-3. Pesnell's claim for legal interest fails for the same reasons articulated in the Magees' analysis.

> La. C. C. P. art. 2000 provides for judicial interest on money claims as follows:
>
> "When the object of performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due, at the rate agreed by the parties or, in the absence of agreement, at the rate of legal interest as fixed by R.S. 9:3500."
>
> The Leases each contained the following provision regarding the bonus payment:
>
> "Lessee agrees that if Lessor establishes that the mineral servitude expired prior to the granting of this lease...by final, unappealable judgment of a court of competent jurisdiction…Such additional bonus consideration will be paid to Lessor within 30 days after Lessor has submitted to Lessee a certified copy of such acknowledgment or judgment."

Record Document 27-6 at 9, 16, 23, 29.

As discussed above, the thirty-day delay period did not commence when Pesnell sent BHP the documents attached to its April 14, 2015 letter. BHP was not obligated to pay the principal amount of the bonus payment until it received a certified copy of the Judgment of the Second Circuit Court of Appeal, which Pesnell sent to BHP on March 6, 2017. See Record Document 68-3. In order for Pesnell to be successful in its claim for legal interest, BHP must have failed to pay the principal amount within thirty days after receiving the certified copy of the Judgment of the Second Circuit Court of Appeal, which

BHP did not do when it sent a check for the agreed principal amount, $489,117.13, to Pesnell on March 29, 2017. BHP did not impermissibly delay its performance, therefore, Pesnell cannot collect interest pursuant to La. C. C. P. art. 2000. Consequently, Pesnell's claim to collect legal interest on the bonus payment because of BHP's justifiable delay in performance must be dismissed.

## CONCLUSION

The Court finds the granting of BHP's Cross Motion for Partial Summary under Rule 56 appropriate because there is no genuine dispute of material fact that Plaintiffs failed to send the requisite documents to put BHP on notice that payment of the royalties were due. Based on the specific provision of the Lease, BHP was not unreasonable in its failure to pay; therefore, the Magees cannot recover double damages, interest, and attorneys' fees under Article 139 of the Mineral Code. Additionally, the Court finds an order of accounting to be premature at this time. Accordingly, BHP's Cross Motion for Partial Summary Judgment is **GRANTED**.

For the same reasons, the Magees' Motion for Partial Summary Judgment is **DENIED**.

Pesnell's claim for legal interest on the bonus payment is dismissed because the bonus payment was not due until BHP received the requisite documents. As mentioned above, Pesnell did not start the thirty-day delay until it sent a certified copy of the Judgment of the Second Circuit Court of Appeal to BHP. Accordingly, Pesnell's Motion for Summary Judgment is **DENIED**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, on this the 13th day of November, 2017.

_____
S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT